# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IVAN JAMES REED,            )
                                     )
            Plaintiff,        )
                                       )     **CIVIL ACTION**
v.                                        )
                                       )     **No. 09-1395-JWL**
                                       )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,   )
                                       )
            Defendant.    )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.      Background

Plaintiff applied for DIB and SSI on January 29, 2007 alleging disability since January 18, 2007.  (R. 9, 109-19).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge

(ALJ). (R. 9, 49-52, 63-64). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Edmund C. Werre on March 24, 2009. (R. 9, 21-22). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 9, 22-45). Thereafter, ALJ Werre issued a decision finding that Plaintiff has the residual functional capacity (RFC) for a range of light work which would allow him to alternate sitting and standing every thirty minutes, but which would not require: climbing ladders, ropes, or scaffolds; exposure to hazards such as unprotected heights, dangerous moving machinery, or operation of motorized vehicles; or exposure to irritants such as fumes, gases, or chemicals. (R. 9-20). Based upon this RFC, the ALJ found Plaintiff is unable to perform his past relevant work, but that when also considering his age, education, and past work experience, a significant number of jobs exist in the economy that Plaintiff is able to perform. (R. 19-20). The ALJ found Plaintiff is not disabled within the meaning of the Act, and denied his applications for disability. (R. 20).

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council denied review. (R. 1-5). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff seeks judicial review of this decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (final decision in an SSI case is also "subject to judicial review as provided

in section 405(g) of this title").  Section 405(g) of the Act provides that, "The findings of

the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  The court must determine whether the factual findings are supported by

substantial evidence in the record and whether the ALJ applied the correct legal standard.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d

903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a

preponderance, and it is such evidence as a reasonable mind might accept to support a

conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.

1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether

substantial evidence supports the Commissioner's decision, however, is not simply a

quantitative exercise, for evidence is not substantial if it is overwhelmed by other

evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen,

865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a

physical or mental impairment which prevents him from engaging in substantial gainful

activity and which is expected to result in death or to last for a continuous period of at

least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing

42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985)

(quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in assessing RFC because the RFC assessed is internally inconsistent and the ALJ therefore erroneously concluded that Plaintiff can perform light work.  (Pl. Br. 4-5).  He also claims the ALJ erroneously discounted the opinion of his treating physician, Dr. Hetlinger.  Id., at 5-10.  The Commissioner counters that the ALJ properly evaluated Dr. Hetlinger's opinion and properly assessed Plaintiff's RFC.  The court finds no error and affirms the Commissioner's decision.  It will address the issues in the order presented in Plaintiff's brief.

## III.    RFC Assessment

Plaintiff argues that the RFC assessed is internally inconsistent, and the ALJ should have instead assessed an RFC for sedentary work.  Plaintiff points to the RFC assessed in this case and notes the ALJ found that Plaintiff can "perform a range of **light work** as defined in 20 CFR 404.1567(b) and 416.967(b) or work requiring him to lift and/or carry 20 pounds occasionally or 10 pounds frequently, **stand and/or walk six hours** in an 8-hour workday, and **sit six hours** in an 8-hour workday."  (Pl. Br. 4) (quoting (R. 13)) (emphases in Pl. Br.).  He notes the ALJ found Plaintiff "**would need to**

**alternate sitting and standing every 30 minutes**."  (Pl. Br. 4) (quoting (R. 13))
(emphasis in Pl. Br.).  Plaintiff quotes Social Security Ruling (SSR) 83-10 for the
proposition that the primary difference between sedentary and light level work is that
even when the weight lifted is very little, a job is placed in the light category "when it
requires a good deal of walking or standing."  (Pl. Br. 4) (quoting SSR 83-10, 1983 WL
31251, *5).  He also notes that, "Since frequent lifting or carrying requires being on one's
feet up to two-thirds of a workday, **the full range of light work requires standing or
walking, off and on, for a total of approximately 6 hours of an 8-hour workday**."  Id.
(quoting SSR 83-10, 1983 WL 31251, *5) (emphasis in Pl. Br.).  He then argues, "Simple
arithmetic shows that plaintiff, with the 'need to alternate sitting and standing every 30
minutes,' as required by the ALJ's RFC, would only be on his feet half of any 8-hour
workday.  This alternation puts plaintiff in sedentary [work], and not light [work], under
the regulations."  (Pl. Br. 5).  The Commissioner argues that SSR 83-12 addresses the
need to alternate standing and sitting, and that the vocational expert here specifically
testified regarding light occupations which would accommodate the need to alternate
sitting and standing every thirty minutes.  (Comm'r Br. 17-18).

       Plaintiff's argument misunderstands the requirements of light work.  Work is
classified by physical exertion requirements:  sedentary, light, medium, heavy, or very
heavy; and the category is determined based upon the amount of physical exertion
required in lifting, carrying, pushing, or pulling.  20 C.F.R. §§ 404.1567, 416.967.  Also,
as Plaintiff's brief suggests, "the <u>full range</u> of light work requires standing or walking, off

and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983

WL 31251 at *5 (emphasis added).

The regulations define "sedentary work" as work which involves lifting no more

than ten pounds, and occasionally lifting or carrying articles like docket files, ledgers, and

small tools; and which involves mostly sitting.  20 C.F.R. §§ 404.1567(a), 416.967(a);

SSR 83-10, 1983 WL 31251, *5.  However, sedentary work often requires a certain

amount of standing and walking, and a job is classified as sedentary "if walking and

standing are required occasionally and other sedentary criteria are met."  Id.

"Occasionally" means from very little, up to one-third of the time.  SSR 83-10, 1983 WL

31251, *5.  Therefore, a sedentary job is usually described as one which requires sitting

about six hours in an eight-hour workday, and walking or standing no more than about

two hours in an eight-hour workday.  Id.

On the other hand,

The regulations define light work as lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10 pounds.
Even though the weight lifted in a particular light job may be very little, a
job is in this category when it requires a good deal of walking or
standing–the primary difference between sedentary and most light jobs. A
job is also in this category when it involves sitting most of the time but with
some pushing and pulling of arm-hand or leg-foot controls, which require
greater exertion than in sedentary work.

SSR 83-10, 1983 WL 31251, *5 (emphasis added); see also, 20 C.F.R. §§ 404.1567(b),

416.967(b) (defining "light work").  Although light work usually involves frequent

standing and walking, it may involve sitting most of the time as described in the

underlined portion of the quotation from SSR 83-10 above. Id. "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b). Therefore, the full range of light work is usually described as work requiring the ability to sit, and stand and/or walk about six hours each in an eight-hour workday. E.g., 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10, 1983 WL 31251, *5-6.

Applying these regulations, when a job requires up to twenty pounds of exertion occasionally, and up to ten pounds of exertion frequently, it will be classified as "light work" even if it does not require standing and/or walking as much as six hours in a workday, or even if it requires sitting more than two hours up to about six hours in a workday. As Plaintiff argues, simple arithmetic shows that because Plaintiff must alternate sitting and standing every thirty minutes, he must work at a job that requires or allows sitting and standing at thirty minute intervals, each for half of an eight-hour workday. This fact does not transform the job from "light work" to "sedentary work"–the physical exertion requirements determine the classification of the work.

That neither sitting, standing, or walking alone is required for about six hours in a day is of no significance in this case. The ALJ did not find that Plaintiff was able to perform "the full range" of light work, but he found Plaintiff is able to perform "a range of light work" which would allow him to alternate sitting and standing every thirty minutes. If Plaintiff is arguing error because the ALJ did not affirmatively state in his RFC assessment that the job performed must allow sitting and standing four hours each in

a workday, that alleged omission is not error because it is subsumed within the requirement to alternate sitting and standing at thirty minute intervals. The ALJ's statement that Plaintiff is able to perform work requiring him to "stand and/or walk six hours in an 8-hour workday, and sit six hours in an 8-hour workday," does not require a different result. The ALJ was referring to an eight-hour workday, not a twelve-hour workday, therefore the ALJ's statement cannot been seen to require <u>either</u> sitting <u>or</u> standing and/or walking by itself for six hours in each workday. Rather, the ALJ's statement defines the limits of "light work" in general, and the requirement to alternate sitting and standing every thirty minutes sets the parameters for specific work of which Plaintiff is capable.

Moreover, as the Commissioner's brief suggests, the ALJ provided identical limitations in his hypothetical questioning of the vocational expert:

> Q    For hypothetical one, lets assume we have a 53-year-old male with an eleventh grade education . . . who is limited to a range of light, work defined as the occasional lifting up to 20 pounds and frequent lifting up to 10 pounds; standing, walking six hours of an eight-hour work day; sitting six hours out of an eight-hour work day; with alternating sitting, standing every 30 minutes

(R. 42). When asked if there is work such an individual could perform, the vocational expert responded that such an individual could perform light work as a counter clerk, a storage facility rental clerk, or a microfilm processor. (R. 43). Therefore, both the regulations and the vocational expert testimony support the ALJ's finding that Plaintiff has the RFC for a range of light work.

The court finds no internal inconsistency in the RFC assessed, and therefore, no error in the ALJ's classification of an RFC for a range of light work. Consequently, Plaintiff's further argument that Plaintiff might "grid" by meeting a medical-vocational guideline as a fifty-year-old who is limited to sedentary work with a limited education[1] and no transferable skills, is unavailing because Plaintiff has not established that he is limited to sedentary work.

## IV. Evaluation of the Treating Source Opinion

Plaintiff claims several errors in the ALJ's evaluation of the opinion of his treating physician, Dr. Hetlinger. The court addresses these errors in the order presented by Plaintiff. First, Plaintiff claims that the ALJ erred by reaching inconsistent conclusions regarding Dr. Hetlinger's opinion, and by evaluating Dr. Hetlinger's care through April 2009, although the hearing occurred on March 24, 2009. (Pl. Br. 7). Specifically, he argues the ALJ's statement that "[t]he severity of the claimant's physical symptoms **is generally supported** by objective medical evidence . . . while he was under the primary care of **Dr. Hetlinger** . . . **through April 2009**," (Pl. Br. 7) (quoting (R. 15)) (emphases in Plaintiff's brief), is clearly inconsistent with the ALJ's statement that "[t]he severity of the claimant's impairments while under the care of **Dr. Hetlinger through April 2009 is**

_____

[1]The parties argue whether Plaintiff has a "limited education" or "at least a high school education," but the court need not decide that issue here because Plaintiff is not limited to sedentary work. For light work, so long as Plaintiff is literate and able to communicate in English, both the Medical-Vocational Guidelines, and the vocational expert testimony establish that he is "not disabled." 20 C.F.R., Pt. 404, Subpt. P, App. 2, §§ 202.00(d), 202.09-202.12; (R. 42-43).

**not supported** by signs, laboratory outcomes, or diagnostic results of his treatment although they indicate that the claimant has continuing symptoms of diabetes aggravated by hypertension and bronchitis." Id. at 7 (quoting (R. 15)) (emphasis and underline in Plaintiff's brief). He also implies that the ALJ's consideration of treatment through April 2009 is erroneous because the hearing was on March 24, 2009, and the ALJ could not evaluate the treatment thereafter. Id. Plaintiff then speculates that the ALJ meant to say June 1, 2007 when he said April 2009. Id. The Commissioner does not agree that the ALJ meant to say June 1, 2007 instead of April 2009, and argues that April 2009 is correct because it was the date of the last medical records submitted by Plaintiff. (Comm'r Br. 15). He also argues that the ALJ found the severity of Plaintiff's symptoms were supported by objective medical evidence, but the severity of Plaintiff's impairments were not supported by Dr. Hetlinger's evidence. Id. at 14-15.

With regard to the ALJ's consideration of Dr. Hetlinger's treatment "through April, 2009," the court finds no error. The ALJ told Plaintiff's counsel that he would leave the record open for two weeks (R. 24), and noted in the decision that the record was held open after the hearing, and during that period Plaintiff's representative provided medical evidence from Dr. Hetlinger "which was received and entered into the record as Exhibit 18F." (R. 9). Exhibit 18F contains treatment records from Dr. Hetlinger dated from February 25, 2009 through April 3, 2009 (R. 447-54), a memo regarding Plaintiff's sleep apnea and shortness of breath dated March 24, 2009 (R. 455), and a "Medical Source Statement: Residual Functional Capacity Questionnaire," completed by Dr.

Hetlinger, and dated April 3, 2009. (R. 442-46). The record establishes that Dr. Hetlinger treated Plaintiff in April, 2009, and it is not error for the ALJ to state that Plaintiff was under the care of Dr. Hetlinger through April 2009.

Plaintiff's argument alleging inconsistencies between the ALJ's first statement (that the severity of Plaintiff's physical symptoms is generally supported by certain evidence), and the second statement (that the severity of Plaintiff's impairments is not supported by certain evidence), misunderstands the decision at issue. In finding number 5, the ALJ stated his RFC assessment for Plaintiff (R. 13), and explained how he had arrived at that assessment in the next six pages of the decision. (R. 13-18). In his explanation, the ALJ stated the applicable legal standard, summarized the testimony and the record evidence, and explained his credibility determination and his evaluation of the medical opinions. Id. He further subdivided a portion of his analysis into three sections, one discussing the medical evidence (R. 15-17), one addressing Plaintiff's daily activities (R. 17), and one addressing Plaintiff's work history. (R. 17). He concluded this section of the decision: by summarizing his assessment, stating his credibility findings, stating the weight accorded the medical opinions, and stating the weight accorded the third-party statement of Plaintiff's niece. (R. 17-18).

In his discussion of the medical evidence, the ALJ first stated his conclusion:

The objective medical evidence including the course of treatment and the location, duration, frequency, and intensity of the claimant's symptoms are fully consistent with the above residual functional capacity but are inconsistent with the allegations of disability. While the claimant ultimately alleged that he is unable to work fulltime due to physical

symptoms including fatigue and side effects from medications, the severity
of these symptoms is **not totally supported by objective medical evidence**
including reports from treating sources.

(R. 15) (underline in original, bold added for emphasis).

In the next ten paragraphs, the ALJ laid out that medical evidence which he found
to be supportive of a finding of disability and that medical evidence which he found not to
be supportive of a finding of disability, and explained why he had arrived at his
conclusion that the medical evidence as a whole is consistent with the RFC assessed and
is inconsistent with Plaintiff's allegations of disability.  (R. 15-17).  Except for two small
paragraphs containing merely a statement of fact and the ALJ's conclusion from his
discussion of the medical evidence, each paragraph in this section contains a thesis
sentence stating how that portion of the medical evidence fits (in favor of or contrary to)
the ALJ's analysis of the medical evidence as a whole.  Id.  When considered together,
these paragraphs reveal the ALJ's relative assessment of the medical evidence within his
RFC assessment.  Id.  Here, the court quotes each thesis sentence edited only for brevity:

> The severity of the claimant's physical symptoms is generally supported by
> objective medical evidence . . . while he was under the primary care of Dr.
> Hetlinger and the specialized care of Michael E. Bolt, M.D. . . . and
> Devendra K. Jain, M.D.
>
> * * *
>
> The severity of the claimant's impairments while under the care of Dr.
> Hetlinger through April 2009 is not supported by signs, laboratory
> outcomes, or diagnostic results of his treatment.
>
> * * *

13

The severity of the claimant's symptoms . . . are not supported by recent treatment.

* * *

Although the claimant alleges that he is unable to work fulltime . . ., the severity of these symptoms is not totally supported by medical opinions from <u>credible</u> treating sources, examining, and reviewing sources.

* * *

The claimant's allegations that he is unable to perform fulltime work due to physical restrictions are generally supported by the opinions of Dr. Hetlinger.

* * *

However, the undersigned has been unable to accord controlling weight to opinions of [Dr. Hetlinger] . . ., since his conclusions are not supported by objective medical and other evidence including his own treatment notes and the daily activities of the claimant.

* * *

Additionally, the severity of the claimant's impairments . . ., is not supported by opinions of C. A. Parsons, M.D., a State agency physician.

* * *

Finally, the severity of the claimant's impairments . . ., is not supported by opinions of Carl A. Inzerillo, D.O., a State agency physician.

(R. 15-16) (emphasis in original).

In context, the ALJ's statement that the severity of Plaintiff's physical symptoms <u>is generally supported</u> by certain evidence; when considered along with the statement that the severity of Plaintiff's impairments <u>is not supported</u> by certain evidence does not reveal inconsistent conclusions by the ALJ in weighing Dr. Hetlinger's opinion, but

reveals that the ALJ was considering all of the evidence regarding RFC, even that which might support a conclusion different than that reached by the ALJ. Here, the ALJ considered the medical evidence which supported his conclusions along with the evidence which detracted from his conclusions, and explained how he had weighed the evidence, and why he had arrived at the conclusions reached in the decision. Plaintiff shows neither inconsistency nor error in these conclusions.

Second, Plaintiff noted that the ALJ found Plaintiff's alcohol abuse was "not a contributing factor material to the determination of disability," and argued that it was improper in these circumstances for the ALJ to rely upon the alcohol abuse in discounting Dr. Hetlinger's opinion. (Pl. Br. 8-9) (quoting (R. 11)). As Plaintiff's brief suggests, the ALJ discounted Dr. Hetlinger's opinion in part because his opinion was not supported by his treatment notes in which he suggested that Plaintiff's hypertension would improve if Plaintiff abstained from alcohol abuse. (R. 16). As the ALJ found, in Dr. Hetlinger's treatment note on October 14, 2008, he noted that Plaintiff has hypertension and "ETOH abuse," and that he "needs to be abstinent from ETOH," thereby suggesting that the hypertension would improve if he abstained from alcohol abuse. (R. 414). Plaintiff does not deny the suggestion the ALJ found in the treatment note, and he does not provide any authority for the proposition that the ALJ should ignore this suggestion merely because he determined that Plaintiff's "symptoms related to alcohol abuse are episodic, periodically in remission . . ., generally nonsevere, and not a contributing factor material to the determination of disability." (R. 11). These findings by the ALJ have nothing to do with

the fact that the severity of limitations contained in Dr. Hetlinger's opinion are inconsistent with the doctor's suggestion that Plaintiff's hypertension would improve if he abstained from alcohol abuse. Further, <u>Plaintiff's hearing testimony</u> regarding his use of alcohol has very little relevance to the weight that should be assigned to Dr. Hetlinger's opinion regarding Plaintiff's limitations. Plaintiff has shown no error in relying upon this suggestion in Dr. Hetlinger's treatment notes.

Plaintiff next pointed to the facts that no physical consultative examination was given, that the state agency consultants who reviewed the record "did not even find plaintiff's physical complaints severe," and that the ALJ gave substantial weight to the consultants' work limitations, but found Plaintiff more limited than originally thought because of certain evidence regarding Plaintiff's physical limitations received into the record after the consultants' review, "especially partially credible testimony by the claimant at the hearing." (Pl. Br. 9) (quoting (R. 18)). Plaintiff then argued that the "ALJ cannot rely on plaintiff for medical findings," and that an ALJ's RFC assessment "must be based on medical evidence, [but] he does not say what medical evidence convinced him to follow neither the lower level consultative physicians nor Dr. Hetlinger's opinion." <u>Id.</u> He argued that an ALJ may not substitute his own medical opinion for that of the treating physician, and that "In the absence of any medical evidence, medical opinion evidence, or clear indication from the record that the opinion of the treatment provider is inconsistent with the treatment notes or medical test results, the ALJ overstepped his bounds into the province of medicine." <u>Id.</u> at 10 (citing <u>Hamlin v. Barnhart</u>, 365 F.3d

1208, 1221 (10th Cir. 2004); <u>Miller v. Chater</u>, 99 F.3d 972, 977 (10th Cir. 1996)).[2]  The

Commissioner argued that it is the ALJ's responsibility to assess an RFC which is based

upon more than just medical findings, that the ALJ must consider hearing testimony in

assessing RFC, and that the ALJ is the trier of fact in disability determination and has the

duty to resolve conflicts in the medical evidence.  (Comm'r Br. 15-16).

To the extent Plaintiff is arguing that every limitation in the RFC assessed by the

ALJ must have its basis in a <u>medical</u> opinion or in a statement in the <u>medical</u> evidence, he

is incorrect.  An RFC assessment is to be "based on <u>all</u> of the relevant medical <u>and other</u>

<u>evidence</u>." 20 C.F.R. §§ 404.1545(a), 416.945(a) (emphases added).  At the ALJ hearing

level, it is the ALJ's responsibility to assess RFC.  <u>Id.</u> §§ 404.1546(c), 416.946(c).  The

Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies

and policy interpretations regarding the assessment of residual functional capacity (RFC)

in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143

(Supp. 2010).  The ruling provides that "The RFC assessment must be based on all of the

relevant evidence in the case record," and lists examples of such evidence including both

medical evidence and nonmedical evidence such as reports of daily activities, lay

evidence, and effects of symptoms.  <u>Id.</u> at 147.  The ruling notes that the "RFC

---

[2]The court notes that Plaintiff also cited to certain unpublished decisions of courts in the District of Kansas, but those decisions are not available electronically, and Plaintiff did not attach copies of the opinion to his brief as required by Local Rule 7.6(c). Nonetheless, the court searched out the decisions on the court's CM/ECF system, and considered them in making this decision.

assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) <u>and nonmedical evidence</u> (e.g., daily activities, observations)." <u>Id.</u> at 149 (emphasis added). The narrative discussion must include consideration of the credibility of <u>plaintiff's allegations of symptoms</u> and consideration of medical opinions regarding plaintiff's capabilities. <u>Id.</u> at 149-50. Not only is the ALJ allowed to rely upon Plaintiff's testimony in making his RFC assessment, he is required to consider it, and that testimony might properly be used to discount a medical opinion in appropriate circumstances. To the extent Plaintiff's testimony is inconsistent with a treating source opinion, it is proper to use that testimony to discount the opinion.

As Plaintiff's brief suggests, the only limitations found by the agency consultants were the inability to climb ladders, ropes, and scaffolds, and the need to avoid all exposure to hazards. (R. 403-10, 412, 439). Moreover, one of the consultants stated, "Claim is non-severe from a physical standpoint." <u>Id.</u> at 439. The ALJ stated he gave "substantial weight" to the consultants' opinions "in regard to claimant's <u>work limitations</u>." (R. 18). However, he stated he received additional evidence, especially Plaintiff's partially credible hearing testimony, which convinced him Plaintiff had greater limitations than assessed by the consultants. <u>Id.</u> A fair reading of the decision in context reveals that the ALJ gave substantial weight to the consultants' opinions that Plaintiff is unable to climb ladders, ropes, and scaffolds, and must avoid hazards; but he was convinced by later evidence (primarily Plaintiff's testimony) that Plaintiff must avoid

irritants like fumes, gases, and chemicals; and that Plaintiff is physically limited to lift

and carry twenty pounds occasionally and ten pounds frequently, and to alternate sitting

and standing every thirty minutes, as detailed in the decision. The ALJ specifically

pointed to the evidence upon which he based his RFC assessment and upon which he

relied in discounting Dr. Hetlinger's opinion. As the Commissioner points out the ALJ is

the trier of fact. He is not required to accept all of Plaintiff's testimony or reject all of

Plaintiff's testimony. Here, he found Plaintiff's testimony partially credible, and to the

extent it is inconsistent with Dr. Hetlinger's opinion or the opinions of the state agency

consultants, he may rely upon those inconsistencies in evaluating the opinions.

Plaintiff argues that the ALJ did not "discount Dr. Hetlinger's opinion with

anything other that his own treatment notes," and he failed to consider that Dr. Hetlinger

had treated Plaintiff every three months since 2007. (Pl. Br. 10). Plaintiff's argument is

without merit. Other than just Dr. Hetlinger's treatment notes, the ALJ also noted that

although the medical records indicated "symptoms of diabetes aggravated by

hypertension and bronchitis managed pharmacologically by Advair," there had been no

emergency room visits, no hospitalizations, and no seizures since June 1, 2007. (R. 15).

He also noted that the opinions of the state agency consultants, Dr. Parsons, and Dr.

Inzerillo were contrary to that of Dr. Hetlinger. (R. 16).

Plaintiff's attempt to imply that the ALJ did not consider the deference due Dr.

Hetlinger's opinion as a treating source opinion, and did not weigh the opinion in

accordance with the regulatory factors, also fails. Although the ALJ did not <u>state</u> that Dr.

Hetlinger treated Plaintiff every three months since 2007 as Plaintiff argues, he did recognize that Dr. Hetlinger was Plaintiff's family practitioner from whom he received "continuing care" "from February 2007 through April 2009." (R. 15) (citing exhibits containing Dr. Hetlinger's treatment records). This fact reveals that the ALJ recognized Dr. Hetlinger as a treating source, and considered the length, nature and extent of the treatment relationship–one of the regulatory factors to be considered in weighing medical opinions. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)  Moreover, even if the only evidence relied upon by the ALJ in discounting Dr. Hetlinger's opinion had been the inconsistencies in his own treatment notes as Plaintiff alleges, that fact indicates the ALJ considered at least two more of the regulatory factors. Id., §§ 404.1527(d)(3, 4); 416.927(d)(3, 4) (supportability, consistency). Plaintiff points to no evidence suggesting that a particular, relevant regulatory factor was not considered.

Finally, Plaintiff points to no authority tending to establish that it is error to rely only on inconsistencies in the treating source opinion to discount that opinion. Plaintiff does not argue that the ALJ's findings of inconsistency are erroneous. He merely argues that they constitute an insufficient basis to discount the opinion. The court does not agree. As discussed above, the ALJ stated reasons for discounting Dr. Hetlinger's opinion, and those reasons are supported by substantial evidence in the record as a whole. The ALJ as the trier of fact has the responsibility to assess RFC (and medical opinions) based upon the totality of the record evidence. Clearly, he did not "articulate an RFC out of whole cloth" as alleged by Plaintiff, but pointed to the record evidence upon which he

20

relied in making his assessment. Contrary to Plaintiff's assertion, there is no evidence from which the court might conclude that the ALJ merely substituted his medical opinion for that of Dr. Hetlinger. The ALJ properly discounted Dr. Hetlinger's opinion, and provided specific, legitimate reasons for doing so based upon record evidence.

**IT IS THEREFORE ORDERED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 9th day of February 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**